AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Texas

| | |
|---|---|
| United States of America<br>v.<br><br>ADAM P. RUNSDORF<br><br>*Defendant(s)* | Case No.<br>1:22-MJ-1 |

FILED: **1/10/22**
U.S. DISTRICT COURT
EASTERN DISTRICT COURT
DAVID A. O'TOOLE, CLERK

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  April, 2014 to August, 2021  in the county of  Jefferson and Liberty  in the
Eastern District of  Texas  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy |
| 18 U.S.C. § 1956 | Money laundering |
| 18 U.S.C. § 2320(a)(4) | Trafficking in Drugs with a Counterfeit Mark |

This criminal complaint is based on these facts:
Please see attached Affidavit.

☑ Continued on the attached sheet.

/s/ Walter Hammann by Judge Tom Rom w/ permission
*Complainant's signature*

DEA, Walter Hammann
*Printed name and title*

by phone by permission
Sworn to before me and signed in my presence.

Date:  01/10/2022

*Judge's signature*

Hon. Zack Hawthorn, US Magistrate Judge
*Printed name and title*

City and state:  Beaumont, Texas

1:22mj1

## AFFIDAVIT

I, Walter A. Hammann IV, being first duly sworn, state as follows:

1. I am a Task Force Officer (TFO) with the United States Drug Enforcement Administration (DEA) currently assigned to the Houston Division - Galveston Resident Office. I have been so employed since April 2015. I am also a police officer for League City, Texas, where I have been employed for approximately 19 years. I have been working exclusively in the field of narcotics law enforcement since 2013. Since becoming a narcotics detective, I have received hundreds of hours of training in narcotics law enforcement and participated in numerous complex narcotics conspiracy and money laundering investigations. I have also received on-the-job training conducting narcotics and financial investigations. I have personally investigated a number of cases involving the possession and sale of controlled substances, including the concealment of illicit proceeds in the form of money and other assets. As part of these investigations, I have identified co-conspirators through the use of drug trafficking ledgers, telephone bills and records, and photographs. Since becoming a DEA Task Force Officer, I have specialized in investigations involving narcotics trafficking and money laundering and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. I have been

involved in various types of electronic surveillance, in the execution of search and arrest warrants, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from controlled substance trafficking.

2. By my training and experience, I am familiar with federal criminal law, including 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1956 (money laundering), and 18 U.S.C. § 2320(a)(4) (trafficking in drugs with a counterfeit mark).

3. Title 18 U.S.C. § 371 makes it a crime for two or more persons to conspire to commit an offense against the laws of the United States, where at least one conspirator commits an overt act in furtherance of the conspiracy. Title 18 U.S.C. § 2320 (a)(4) makes it a crime to intentionally traffic in a drug and knowingly use a counterfeit mark on or in connection with such drug. Title 18 U.S.C. § 1956 makes it a crime for any person, knowing that the property involved in a financial transaction represents the proceeds of specified unlawful activity, to conduct or attempt to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity; or, knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the

control of the proceeds of specified unlawful activity. Conspiracy to traffick in drugs with a counterfeit mark is a specified unlawful activity.

4. I am submitting this affidavit for the limited purpose of securing a criminal complaint against **Adam P. Runsdorf (Runsdorf)** for his violations of Sections 371, 1956, and 18 U.S.C. § 2320(a)(4). Therefore, I am not setting forth every fact known to me concerning this investigation. I am including only those facts necessary to establish probable cause for the complaint. The following information is known by me personally, or was reported to me by other federal and state law enforcement agencies.

5. **Runsdorf** is the owner and president of Woodfield Pharmaceutical LLC, a/k/a "WDPrx," a/k/a "Woodfield" (Woodfield). Woodfield is a pharmaceutical business based in Boca Raton, Florida, with a manufacturing facility at 10863 Rockley Road in Houston, Texas. Woodfield holds itself out as a contract manufacturing organization specializing in liquid solutions and offering pharmaceutical outsourcing services including research and development, commercial manufacturing, regulatory support, packaging, and labeling.

6. The United States Food and Drug Administration (FDA) is the federal agency charged with the responsibility of protecting the health and safety of the American public by ensuring, among other things, that drugs sold for administration to humans bear labeling containing true and accurate information. The FDA's

responsibilities include regulating the labeling and distributing of prescription drugs shipped or received in interstate commerce.

7. Under the Food, Drug and Cosmetic Act (FDCA), the definition of a "drug" includes articles that are intended (1) for use in the diagnoses, cure, mitigation, treatment or prevention of disease in humans, and (2) to affect the structure or function of the human body. Due to toxicity and other potential harmful effects, certain drugs are not considered safe for use except under the supervision of a practitioner licensed by law to administer such drugs. These drugs are known as prescription drugs.

8. Promethazine and promethazine-codeine cough syrup are prescription drugs approved by the FDA for distribution within the United States.

9. Promethazine-codeine and similar promethazine-based cough syrups can have tranquilizing and euphoric effects when consumed at higher-than-recommended doses, especially when mixed with alcohol or drugs such as marihuana.

10. Some popular music has glamorized drinking promethazine-codeine cough syrup for its mind-altering effects, and promethazine-codeine has become increasingly popular among recreational drug users in Southeast Texas and elsewhere. Promethazine-codeine cough syrup mixed with a soft drink is sometimes referred to as "syrup," "drank," or "lean."

11. Promethazine-codeine cough syrup products vary by manufacturer in terms of

viscosity, coloring, and taste. Manufacturers market their promethazine-codeine cough syrup with distinctive brand-name labeling.

12. Actavis Prometh VC With Codeine cough syrup is a prescription drug manufactured and distributed by Actavis Holdco US, Inc. (Actavis Holdco US, Inc. is a subsidiary of its parent company, TEVA Pharmaceuticals USA, Inc.). The Actavis logo is owned by Actavis Holdco US, Inc. and registered in the principal registry in the United States Patent and Trademark Office.

13. Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Oral Solution is a prescription drug manufactured and distributed by Hi-Tech Pharmacal (now Akorn). The "Hi-Tech" name and logo are owned by Hi-Tech Pharmacal (now Akorn) and Akorn retains common law trademark rights to the "Hi-Tech" name and logo.

14. Wockhardt Promethazine Syrup Plain is a prescription drug manufactured and distributed by Wockhardt USA LLC. The "Wockhardt" name is a trademark owned by Wockhardt USA LLC and registered in the principal registry in the United States Patent and Trademark Office.

15. PAR Promethazine VC with Codeine Oral Solution is a prescription drug manufactured and distributed by Par Pharmaceutical Companies, Inc. (Par Pharmaceutical Companies, Inc. is a subsidiary of its parent company, Endo International). The "PAR" name and logo are trademarks owned by Par

Pharmaceutical Companies, Inc. and registered in the principal registry in the United States Patent and Trademark Office.

16. Qualitest Promethazine DM Syrup is a prescription drug manufactured and distributed by Generics Bidco I, LLC, doing business as, Qualitest Pharmaceuticals, Inc. (Generics Bidco I, LLC, doing business as, Qualitest Pharmaceuticals, Inc., is a subsidiary of its parent company Endo International). The "Qualitest" name and brown/white stripe are trademarks owned by Generics Bidco I, LLC, doing business as Qualitest Pharmaceuticals, Inc., and registered in the principal registry in the United States Patent and Trademark Office.

17. Tris Pharma Promethazine Hydrochloride and Codeine Phosphate Oral Solution is a prescription drug manufactured and distributed by Tris Pharma, Inc. The "Tris Pharma" name and "Tris" logo are trademarks owned by Tris Pharma, Inc. and registered in the principal registry in the United States Patent and Trademark Office.

18. Amneal Promthazine HCI and Codeine Phosphate Syrup is a prescription drug manufactured and distributed by Amneal Pharmaceuticals, LLC. The "Amneal" name and script logo(s) are trademarks owned by Amneal Pharmaceuticals, LLC and registered in the principal registry in the United States Patent and Trademark Office.

19. The FDCA regulates the importation, delivery, distribution and receipt of drugs in

interstate commerce. Under the FDCA, a drug is deemed misbranded if its labeling is false or misleading in any particular manner. A drug is also deemed to be counterfeit if it bears a trademark without the authorization of the registrant of the trademark. The FDCA prohibits the introduction or delivery for introduction into interstate commerce of any misbranded drug.

20. Since May 2016, I have been investigating the illegal manufacture, distribution, and trafficking of counterfeit promethazine syrup products by a drug trafficking organization (the Marshall DTO) based in the Houston area of Texas, led by Byron A. Marshall a/k/a "Robert Griffin," a/k/a "Dr. Griffin" (Marshall) and Tunji Campbell, a/k/a "Mike" (Campbell).

21. I know by my investigation that, beginning in or about 2014, and continuing thereafter until in or about August 2021, the Marshall DTO partnered with Woodfield, including **Runsdorf** and his employees and facilities, for assistance with the development, production, and delivery of misbranded and counterfeit promethazine-codeine cough syrup.

22. During that time span, my investigation revealed the following information and overt acts pertaining to the Marshall DTO's conspiracy to distribute misbranded and counterfeit promethazine-codeine cough syrup:

    a. On September 23, 2015, a coconspirator used an automobile to transport 32 pints of unmarked promethazine syrup in Liberty County, Texas.

b. On April 19, 2016, Campbell mailed 36 pints of unmarked promethazine syrup from League City, Texas to Miami, Florida.

c. On January 11, 2017, a coconspirator used an automobile to transport 16 pints of promethazine syrup in Bossier Parish, Louisiana. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

d. On March 8, 2017, Marshall sold 64 pints of promethazine syrup to a cooperating witness in Houston, Texas. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

e. On May 4, 2017, Marshall sold 96 pints of promethazine syrup to a cooperating witness in Beaumont, Texas. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

f. On July 20, 2017, Willis Reed (Reed) and Jonathan R. Shaver (Shaver) met and discussed the storage of promethazine for Marshall and Campbell. Reed was Woodfield's Director of Technical Operations from in or about April 2015 until January 2019. Shaver was Woodfield's Production Manager. Shaver reported to Reed during his tenure as Director of Operations.

g. On July 20, 2017, Reed met with Kalpen D. Patel (Patel) and discussed the reverse engineering and formulation of promethazine syrup. Patel was Woodfield's Research and Development Manager from in or about April

2014 until January 2019. In that role, Patel reported to Reed and supervised Woodfield's chemical formulation development, optimization, and scale-up activities for clients. In January 2019, Patel replaced Reed as Woodfield's Director of Technical Operations.

h. On July 21, 2017, Reed met with Chauntell D. Brown, a/k/a "Juan Brown" (Brown) regarding the delivery of counterfeit labels to Woodfield. Brown operated a packaging business called AB Packaging Solutions LLC. Brown was a facilitator and investor in the Marshall DTO.

i. On July 21, 2017, Ashley A. Rhea, "a/k/a Ashley A. Johnson" (Rhea) mailed 16 pints of promethazine syrup from Pearland, Texas to Cleveland, Ohio. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels. Rhea was a close associate of Marshall in the DTO.

j. On July 25, 2017, Marshall and Reed met and discussed payments for products and services provided by Woodfield for the Marshall DTO.

k. On August 2, 2017, Marshall and Reed met to coordinate the pick-up of promethazine syrup from the Woodfield Pharmaceutical LLC manufacturing facility at 10863 Rockley Road in Houston (the Woodfield Pharmaceutical LLC manufacturing facility).

l. On August 22, 2017, Marshall sold 24 pints of promethazine syrup to a cooperating witness in Beaumont, Texas. The bottles bore counterfeit "Hi-

  Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

m. On August 23, 2017, coconspirators attempted to transport 20 pints of promethazine syrup to San Antonio, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

n. On August 24, 2017, Cheryl A. Anderson (Anderson) attempted to transport 226 pints of promethazine syrup to San Antonio, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels. Anderson was a close associate of Marshall in the DTO.

o. On October 21, 2017, a coconspirator used an automobile to transport 319 pints of promethazine syrup in Freestone County, Texas. The bottles bore counterfeit "Actavis Prometh VC with Codeine Cough Syrup" labels.

p. On January 5, 2018, Marshall provided a sample of promethazine syrup to a cooperating witness in Houston, Texas.

q. In or about January 2019, Marshall and Campbell met with **Runsdorf** in Houston, Texas to discuss future business. **Runsdorf** requested that the Marshall DTO increase its business with Woodfield by ordering more "batches" of the promethazine syrup product on a more frequent basis. At that meeting, Marshall paid **Runsdorf** $30,000.00 cash to solidify their

business relationship and as a gesture of goodwill concerning future business between the Marshall DTO and **Runsdorf**. **Runsdorf** informed the Marshall DTO that, from that point forward, **Runsdorf** would only accept payments from the Marshall DTO in the form of cash (U.S. currency). Previously, the Marshall DTO had made payments to Woodfield via checks to Woodfield and through wire transfers directly to **Runsdorf**'s personal accounts. Contemporaneous to **Runsdorf**'s demand for cash payments, **Runsdorf** himself became more hands-on with the Marshall DTO. **Runsdorf** met with members of the Marshall DTO multiple times at the Woodfield facilities in Houston, Texas to discuss improvements to the promethazine syrup product. **Runsdorf** instructed Woodfield employees to comply with the Marshall DTO's request to make the product indistinguishable from other legitimate promethazine syrup products. In concert with this directive, **Runsdorf** allowed the Marshall DTO access to Woodfield facilities, ensuring a more efficient large-scale production process of the promethazine syrup product. This access allowed the Marshall DTO to, among other things, utilize Woodfield equipment to label and bottle the promethazine syrup product in large quantities. **Runsdorf** identified to both the Marshall DTO and Woodfield employees the manner through which all cash payments from the Marshall DTO would be

accepted. Prior to receiving a "batch" of the promethazine syrup product, the Marshall DTO was to deliver cash to Gina Acosta at a Woodfield facility in Houston, Texas. From there, Acosta would package the cash for delivery to **Runsdorf** in Boca Raton, Florida. These packages were typically sent via FedEx and other national mail carriers. Acosta, the Packaging Supervisor for Woodfield, was a close personal associate of **Runsdorf**.

r. On May 24, 2019, Brown delivered counterfeit labels to Campbell.

s. On April 30, 2020, coconspirators used an automobile to transport 336 pints of promethazine syrup in Liberty County, Texas. The bottles bore counterfeit "Wockhardt Promethazine Syrup Plain" labels.

t. On July 13-14, 2020, the Marshall DTO produced a promotional video inside the Woodfield Pharmaceutical LLC manufacturing facility.

u. On December 15, 2020, and continuing into the morning of December 16, 2020, coconspirators inside the Woodfield Pharmaceutical LLC bottled and packaged promethazine syrup for distribution by the Marshall DTO.

v. On December 16, 2020, coconspirators utilized a rental truck to pick-up the bottled and packaged promethazine syrup from the loading dock behind the Woodfield Pharmaceutical LLC manufacturing facility.

w. On January 26, 2021, a coconspirator used an automobile to transport 11

    bottles of promethazine syrup and $11,191 in U.S. currency in Galveston County, Texas. The bottles bore counterfeit "Hi-Tech Promethazine Hydrochloride and Codeine Phosphate Syrup" labels.

x. On February 22, 2021, at approximately 12:33 p.m., Marshall hand-delivered an envelope containing cash to Acosta at the Woodfield Pharmaceutical LLC manufacturing facility at 10863 Rockley Road in Houston, Texas. Shortly thereafter, Acosta and another Woodfield employee counted the cash and packaged it for FedEx shipment to **Runsdorf** in Boca Raton, Florida.

y. On February 22, 2021, at approximately 1:00 p.m., Woodfield employees staged 7 55-gallon drums near the loading dock of the Woodfield Pharmaceutical LLC manufacturing facility.

z. On February 22, 2021, at approximately 3:36 p.m., a coconspirator driving a rental truck arrived at the loading dock behind the Woodfield Pharmaceutical LLC manufacturing facility, and coconspirators loaded the 7 55-gallon drums into the rental truck.

aa. On February 22, 2021, at approximately 4:30 p.m., a coconspirator drove the rental truck to the Marshall DTO storage facility located at 5041 Spencer Highway in Pasadena, Texas.

bb. On February 22, 2021, at approximately 4:58 p.m., Marshal and Campbell

arrived at the storage facility located at the storage facility and, together with the rental truck driver, off-loaded the 7 55-gallon drums into the Marshall DTO storage facility.

23. On February 22, 2021, after the cash payment from Marshall to Acosta (described above in subparagraph "x"), DEA Diversion Investigator Ian Brecht (DI Brecht) contacted FedEx and identified the aforementioned package under FedEx tracking number 772968982460 with the listed recipient of **Adam Runsdorf**, Woodfield Distribution LLC, 951 Clint Moore Rd, Boca Raton, Florida 33487.

24. On February 23, 2021, DI Brecht and Special Agent Lawrence Lilly traveled to FedEx at 17855 JFK Blvd, Houston, Texas and seized the FedEx package addressed to **Runsdorf**.

25. On March 1, 2021, a federal search warrant was executed on the FedEx package and a total of $7,000 in U.S. currency was discovered in a manila envelope inside the FedEx package. The package also contained personal mail addressed to **Runsdorf**.

26. On March 2, 2021, DI Brecht served a subpoena requesting additional information regarding the above-described package (identified by FedEx tracking number 772968982460 with the listed recipient of **Adam Runsdorf**, Woodfield Distribution, LLC, 951 Clint Moore Rd, Boca Raton, Florida 33487). On March 4, 2022, FedEx informed DI Brecht that shipping label on the package was generated

by FedEx Shipper Account #549362842 belonging to Woodfield Pharmaceuticals, LLC, 10863 Rockley Road, Houston, Texas 77099, Phone: 281-530-3077. The Package's listed weight was 2.00 pounds and was serviced as priority overnight shipping to Woodfield Distribution, LLC, Attn: **Adam Runsdorf** 951 Clint Moore Rd Boca Raton, FL 33487 Phone: 561-998-3885.

27. The FedEx subpoena response also included audio recordings from calls placed to FedEx inquiring as to the status of the FedEx package. According to FedEx, during the period of March 1, 2021 and March 3, 2021, three separate calls were made inquiring on the status of the seized FedEx package ranging in length from 7 minutes to over 16 minutes. Callers included Woodfield employees calling on behalf of **Runsdorf**. Both employees identified the FedEx recipient as **Runsdorf** and the delivery address as 951 Clint Moore Rd, Suite A, Boca Raton, Florida 33487, phone number 561-998-3885.

28. The FedEx subpoena response also included five separate internet protocol (IP) addressed linked to inquiries regarding the status of the seized FedEx package. On October 6, 2021, DEA issued a subpoena to Hotwire Communications regarding the previously identified IP addresses. On November 2, 2021, Hotwire Communications identified IP address 104.251.137.99 as being registered to address 3164 St. Annes Place, Boca Raton, FL 33496. I know by my investigation that **Runsdorf**'s home is located at 3164 St. Annes Place, Boca Raton, FL.

29. Hotwire Communication's billing team informed DEA that Adam and Cheryl **Runsdorf** have been the subscribers of this account since 2015. Additional information provided by Hotwire for **Runsdorf**'s account are phone number 561-994-5590 and email address cherylrunsdorf@gmail.com. According to FedEx records, IP address 104.251.137.99 was used to check the status of the seized FedEx package on February 26, 2021.

30. On November 4, 2022, DI Brecht served a subpoena requesting information on FedEx Priority Overnight packages shipped to **Adam Runsdorf** at 951 Clint Moore Road, Boca Raton, Florida during the period of January 1, 2015 through November 3, 2021. On November 15, 2021, FedEx responded to the subpoena with tracking documents for Woodfield Pharmaceuticals' FedEx account 549362842.

31. According to FedEx, 68 priority packages were sent under Woodfield Pharmaceuticals FedEx account to **Adam Runsdorf** at 951 Clint Moore Rd, Suite A, Boca Raton, Florida 33487 during the period of October 16, 2017 and October 19, 2021. Weights of the priority packages shipped from Woodfield Pharmaceuticals and **Runsdorf** were provided for the shipments occurring between November 14, 2019 and October 19, 2021, with packages ranging in weight from 0.5 pounds to 4 pounds. The FedEx packaged seized by law enforcement on February 23, 2020 was included in the results and showed a listed

weight of 2 pounds. Based on my investigation, including previous intelligence and interviews, I believe that these FedEx priority overnight shipments addressed to **Runsdorf** contained cash payments from Marshall and Campbell.

32. On November 3, 2021, the Grand Jury for the Eastern District of Texas, Beaumont Division, returned a three-count indictment charging Byron A. Marshall, a/k/a "Robert Griffin," a/k/a "Dr. Griffin," Tunji Campbell, a/k/a "Mike," Cheryl A. Anderson, Ashley A. Rhea, a/k/a "Ashley A. Johnson," Chauntell D. Brown, a/k/a "Juan Brown," Willis Reed, Kalpen D. Patel, Jonathan R. Shaver, and Gina Acosta with violations of 18 U.S.C. §§ 371, 2320(a)(4), 1956. The case is styled United States of America v. Marshall, et al., and the cause number is 1:21-cr-112.

Based on my training and the above information, I believe that **Adam P. Runsdorf** has also violated 18 U.S.C. §§ 371, 2320(a)(4), and 1956.

The above is true and correct.

Respectfully submitted,

/S/ Walter Hammann by Judge Hammann w/ permission
Walter A. Hammann IV
Task Force Officer
Drug Enforcement Administration

Subscribed to and sworn before me by phone on this 10th day of January, 2021.

_____
United States Magistrate Judge
Eastern District of Texas