UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ADAM P. RUNSDORF | Case No. 1:21-CR-00112-10-MAC |

**REPLY IN SUPPORT OF MOTION FOR RELIEF AS
A VICTIM OF CRIME**

This Court should grant Virtus's motion and allow the company to be heard at Runsdorf's sentencing hearing scheduled for July 27, 2023, in Beaumont. Congress gave victims like Virtus the "right to be reasonably heard" at criminal sentencing. 18 U.S.C. § 3771(a)(4).

In opposition, the government has not directly challenged Virtus's right to be heard at sentencing. Instead, the government has challenged Virtus's "right to full and timely restitution as provided in law." *Id.* § 3771(a)(6). Yet the government has misconstrued the law and mischaracterized Virtus's efforts to protect its rights in this case and elsewhere. This Court should order restitution in the amount of $6,221,386.[1]

---

[1] Virtus is prepared to submit additional briefing or to submit any additional evidence that the Court may require for restitution. As a first step, however, Virtus seeks to be heard at sentencing—a request that the government has not directly opposed.

1

Nothing has changed for Virtus since August 2021. For nearly two years, Virtus has done everything possible to try to facilitate the return of its pharmaceutical products and to recover whatever it can under the law. With remarkable understatement, the government observes that "Virtus has undoubtedly suffered by doing business with drug dealers." Gov. Opp. 16 (Dkt. No. 448). This Court, however, should not countenance victim-blaming. Virtus never sought to do business with drug dealers. Nor has the government ever suggested that Virtus knew of, let alone was involved in, any misconduct or alleged criminal activity. At all times, Virtus has *cooperated* with the DEA and maintained Virtus's innocent ownership right and entitlement to the return of its products.

The government points out that the DEA has not yet destroyed Virtus's pharmaceutical products, but that observation deserves no weight. To this day, it may be that Virtus's products "remain under seal at undisclosed DEA facilities for safekeeping." *Virtus Pharm., LLC v. Garland*, No. 21-2308-CKK, 2021 WL 4306165, at *1 (D.D.C. Sept. 22, 2021). But, as a practical matter, "Virtus has actually suffered a compensable loss" because the products either expired long ago or can no longer be sold to any of Virtus's customers. Gov. Opp. 1 (Dkt. No. 448). Today, the return of Virtus's products is impossible or impractical. *See* 18 U.S.C. § 3663(b)(1)(B); *id.* § 3663A(b)(1)(B).[2]

---

[2] Virtus contacted the DEA in August 2021 regarding the agency's decision to place its pharmaceutical products under seal, and Virtus continued to negotiate with the DEA for the return of its products during the fall of 2021 and into early 2022. The DEA had suggested that a viable recovery plan had to address the logistical concerns that the agency had raised in affidavits filed in opposition to Virtus's motion for a TRO. Virtus directly addressed the agency's concerns, but the DEA refused to return its products. *See* Memo at 9–21, *Virtus v. Garland*, No. 1:22-cv-448-CKK (D.D.C. Mar. 2, 2022) (Dkt. No. 7-1) (summarizing the factual background).

### A. Virtus is a victim of Runsdorf's crimes.

Congress "says in a statute what it means and means in a statute what it says." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). A "crime victim" includes any person who has been "directly and proximately *harmed* as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e)(2)(A) (emphasis added); *see also id.* § 3663(a)(2) (defining "victim" as one who has been "directly and proximately harmed"); *id.* § 3663A(a)(2) (same). The government does not dispute that the term "person" broadly includes business entities like Virtus. *United States v. Richardson*, 67 F.4th 268, 270 (5th Cir. 2023). Indeed, courts routinely have concluded "that restitution may be ordered to non-natural persons." *Id.*

In opposition, the government seizes upon what it views as an "admission"— it claims that Virtus admitted that none of its products were "connected to" Runsdorf's crimes. Gov. Opp. 1; *see also id.* at 7 (citing Virtus's complaint in a civil suit against the DEA). But this argument fails for many reasons.

As an initial matter, no court should read a prior statement "plucked out of context." *Norton v. SUWA*, 542 U.S. 55, 71 (2004). On January 14, 2022, Virtus learned for the first time that the DEA not only had rejected the company's proposed recovery plan but that the agency had considered the pharmaceutical products that Virtus innocently owned forfeited to the United States. Virtus challenged the purported forfeiture because an "innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). Virtus reasonably explained how it qualifies as an innocent owner: the government "never stated that it is holding any of Virtus's pharmaceutical products *as evidence* connected to the

3

ongoing criminal case against Runsdorf and his drug-trafficking co-defendants." Compl. ¶ 72 (filed here as Gov. Exhibit B, Dkt. No. 448-2) (emphasis added). When placed into its proper context, this supposed "admission" has no bearing on the outcome here.

More importantly, "Congress did not write" the relevant statutes that way. *United States v. Naftalin*, 441 U.S. 768, 773 (1979). Neither the text of the Crime Victims' Rights Act nor any restitution statute defines the term "victim" as requiring lost products to be held by the government as "evidence connected to" the underlying crimes. The government confuses apples with oranges in suggesting otherwise.

Virtus properly has established that it qualifies as a victim because it was directly and proximately *harmed* by Runsdorf's crimes. It is irrelevant that Virtus's products were not held "as evidence connected to" those crimes. The relevant statutory inquiry is whether proximate cause exists—i.e., whether there is "some direct relation between [Virtus's] injury" and Runsdorf's crimes. *Holmes v. Securities Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). That direct relationship exists here.

The government nevertheless claims that it "cannot, in good faith, prove that Virtus is a victim of the charged conduct." Gov. Opp. 17. But the government makes no effort to do so; it dismisses Virtus's straightforward explanation of causation as "simplistic." *Id.* at 7. The government misreads the law.

For decades, the Supreme Court has recognized that it is "virtually impossible to announce a black-letter rule that will dictate the result in every case" involving proximate cause. *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 536 (1983). "Instead, previously decided cases identify *factors* that

4

circumscribe and guide the exercise of judgment in deciding whether the law affords a remedy in specific circumstances." *Id.* 536–37 (emphasis added). The inquiry into proximate cause depends on the unique facts of each case: the claimant must show both that its injury is sufficiently connected to the crime and that justice compels a remedy. Virtus satisfies these requirements.

The government insists that "the DEA's enforcement action" against Runsdorf's companies "was not triggered because of Woodfield's false marking." Gov. Opp. 2. But this Court should not accept a post hoc rationalization offered as the government's litigating position in opposition to Virtus's motion. *See Christopher v. SmithKline Becham Corp.*, 567 U.S. 142, 155 (2012)). The government *ignores* what the DEA plainly stated in August 2021.

Virtus does not dispute that the DEA conducted a lengthy investigation and that the agency found that Runsdorf's companies (Woodfield Distribution and Woodfield Pharmaceutical) failed to maintain effective controls against the diversion of controlled substances; failed to maintain accurate records; and failed to report theft or significant loss of controlled substances. *See* Order ¶ 61, Virtus Ex. B (Dkt. No. 447-2). But that is not all. The DEA's order (on page 12) includes a bold heading that the government now prefers to disregard.

### CONNECTIONS TO DRUG TRAFFICKING ORGANIZATION

52. In determining whether a manufacturer's registration is consistent with the public interest, DEA is to consider "such other factors as may be relevant to and consistent with the public health and safety." 21 U.S.C. § 823(a)(6) & (d)(6).

In the paragraphs that follow, the DEA repeated the same allegations found *in this case* and in the criminal case against Woodfield Pharmaceutical—the same events that Runsdorf stipulated to as fact in support of his guilty plea. *See* Dkt. No. 308.

On February 22, 2021, the DEA learned that employees at Runsdorf's company, Woodfield Pharmaceutical, planned to deliver hundreds of gallons of an illegal product to members of a drug-trafficking organization. A confidential source had observed Runsdorf's employees loading a truck with 55-gallon drums, and the DEA followed the truck to a warehouse. *See* Order ¶ 53, Virtus Ex. B (Dkt. No. 447-2). The DEA executed a search warrant the following day, and the agency found the illegal product as well as "drug trafficking paraphernalia." *Id.* ¶ 54. Then, on "March 1, 2021, DEA seized a Federal Express package containing $7,000 in U.S. currency, provided by a member of the suspected [drug-trafficking organization] and addressed to Adam Runsdorf-the president and sole owner of both Woodfield Distribution and Woodfield Pharma." *Id.* ¶ 55; *see also* Factual Basis at ¶ 4bb (Dkt. No. 308).

In these circumstances, Virtus has established "some direct relation" between Runsdorf's misconduct and Virtus's injury. *Holmes*, 503 U.S. at 268. The government nonetheless dismisses *Holmes* and *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) in a footnote, suggesting that Virtus impermissibly has relied on "civil cases that did not involve federal criminal restitution statutes." Gov. Opp. 9 n.3. This argument does not get the government very far because Virtus actually has argued that its losses were directly "caused by the specific conduct underlying the offense of conviction." *United States v. Arledge*, 553 F.3d 881, 899 (5th Cir. 2008).

6

Had Runsdorf "not engaged in money laundering and illegal drug trafficking, the DEA would not have seized Virtus products from Woodfield's warehouses, and Virtus would be able to sell the drugs to its customers and satisfy its financial and contractual obligations." *Virtus Pharm., LLC v. Woodfield Distribution, LLC*, No: 8:21-cv-2427-WFJ-SPF, 2022 WL 2829634, at *9 (M.D. Fla. July 20, 2022); *see also* Motion 10 (Dkt. No. 447) (same).

### B. The government has mischaracterized Virtus's civil litigation.

On August 31, 2021, Virtus filed its first suit against the DEA, asserting that it "is nothing more than an innocent bystander relative to DEA's investigation into Woodfield's Houston facility." Compl. ¶ 63, *Virtus Pharm., LLC v. Garland*, No. 21-2308-CKK (D.D.C. Aug. 31, 2021) (ECF No. 1). Virtus simultaneously moved for a temporary restraining order, requesting that the court issue an "order compelling the DEA to release Virtus's drug supply to a new third-party distributor, so that that Virtus [could] resume its sale operations for those drugs." *Virtus*, 2021 WL 4306165, at *1. The court denied its motion.

Virtus claimed that the DEA's decision to place its pharmaceutical products under seal and to retain those products was arbitrary and capricious under the Administrative Procedure Act. The court found "at this *early stage* of the proceedings," however, that the DEA's decision to place all of Woodfield's controlled substances under seal (including Virtus's) was not arbitrary and capricious. *Id.* at *8 (emphasis added).

The court recognized that circumstances could change. Virtus had argued "that the DEA's *continued retention*" of its products was arbitrary and capricious. *Id.* at *9 (court's emphasis). The court explained that the Controlled Substances Act

"affirmatively deprives the DEA of its ability to dispose of any controlled substance placed under seal subject to the suspension of Woodfield's registration, *until after* Woodfield has concluded its administrative appeals." *Id.* (referring to 21 U.S.C. § 824(f)) (emphasis added).

When the first lawsuit was filed and litigated, the court noted that the administrative hearing and appeals process was still pending for Woodfield's registrations. The court further explained that Virtus had not argued "in its TRO briefing that Woodfield's administrative appeals in this matter have concluded." *Id.* In short, Virtus's first civil case against the DEA is irrelevant here.

The same is true for the second civil case against the DEA, which is still pending in DC. In that case, Virtus has disagreed with the DEA's reading of 21 U.S.C. § 824(f) as allowing for the civil forfeiture of all controlled substances possessed—but not owned—by Woodfield Distribution upon a final order terminating the agency's administrative proceedings against the company as to the continued use of its DEA registration. The Controlled Substances Act is a "civil forfeiture statute" under the Civil Asset Forfeiture Reform Act because it has provisions providing for the civil forfeiture of property. And the Reform Act provides that an "innocent owner's interest in property shall not be forfeited under *any* civil forfeiture statute." 18 U.S.C. § 983(d)(1) (emphasis added). Virtus seeks declaratory relief and an order requiring the DEA to release its pharmaceutical products to a third-party logistics company with a valid DEA registration with whom Virtus already has contracted. Yet, as discussed above, the products no longer can be sold to Virtus's customers. They have expired.

\* \* \*

Virtus requests that the Court grant its motion to appear at the criminal sentencing hearing scheduled on July 27, 2023, to explain the losses that the company has suffered as a victim of Rundorf's crimes and to request restitution in the amount of $6,221,386.

Respectfully submitted,

*/s/ Jeffrey S. Beelaert*
Jeffrey S. Beelaert\*
**STEIN MITCHELL BEATO & MISSNER LLP**
2000 K Street NW, Suite 600
Washington, D.C. 20006
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
Email: JBeelaert@steinmitchell.com

\**Admitted Pro Hac Vice*

July 25, 2023                             Attorney for Virtus Pharmaceuticals, LLC

## CERTIFICATE OF SERVICE

I certify that, on July 25, 2023, I electronically filed the foregoing reply for viewing and downloading from the Court's CM/ECF system, and that the parties in this case are registered CM/ECF users who will be served electronically by the CM/ECF system.

   */s/ Jeffrey S. Beelaert*

9