| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 1:21-CR-112(10) |
| | § | |
| ADAM P. RUNSDORF | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Virtus Pharmaceuticals LLC's ("Virtus") Motion for Relief as a Victim of Crime (#447) in which it seeks restitution as a victim of Defendant Adam P. Runsdorf's ("Runsdorf") crimes and requests permission to be heard at Runsdorf's sentencing hearing. The Government filed a response in opposition (#448), and Virtus filed a reply (#449). Having considered the motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

On November 3, 2021, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a three-count Indictment against nine defendants, but it did not name Runsdorf. On January 10, 2022, a criminal complaint was filed against Runsdorf, charging him with the following offenses, occurring from April 2014 until August 2021: (1) Conspiracy, in violation of 18 U.S.C. § 371; (2) Money Laundering, in violation of 18 U.S.C. § 1956; and (3) Trafficking in Drugs with a Counterfeit Mark, in violation of 18 U.S.C. § 2320(a)(4). On February 2, 2022, the grand jury returned a Superseding Indictment that added Runsdorf as a defendant. All ten

defendants were charged in Count 1 with Conspiracy,[1] in Count 2 with Trafficking in Drugs with Counterfeit Mark, and in Count 3 with Conspiracy to Commit Money Laundering. On April 6, 2022, a Second Superseding Indictment was returned, and on August 3, 2022, a Third Superseding Indictment was returned; neither the Second nor the Third Superseding Indictment included changes with regard to Runsdorf. On August 22, 2022, Runsdorf pleaded guilty to Counts 1, 2, and 3 of the Third Superseding Indictment and is currently set for sentencing on July 27, 2023.

Virtus avers that it sells prescription and non-prescription products to wholesalers, hospitals, specialty pharmacies, and retailers. While Virtus owns technical applications used to produce pharmaceutical products regulated under the Controlled Substances Act, Virtus itself is not registered with the Drug Enforcement Administration ("DEA") to handle controlled substances. Therefore, Virtus outsources manufacturing and distribution of its pharmaceutical products to third-party DEA registrants, such as Woodfield Distribution, LLC ("Woodfield Distribution"), a company owned by Runsdorf.[2] In August 2021, the DEA raided Woodfield Distribution's warehouse in Houston, Texas, seizing all controlled substances stored there, including pharmaceutical products owned by Virtus. After the DEA informed Virtus that it deemed the products seized during the Woodfield Distribution raid to be forfeited, Virtus filed two lawsuits against the DEA, seeking the return of its products. *See Virtus Pharm., LLC v. Garland*,

---

[1] Specifically, Count 1 of the Third Superseding Indictment charged the defendants with conspiring to violate the Food, Drug, and Cosmetic Act with intent to defraud and mislead and cause the introduction and delivery for introduction of misbranded drugs into interstate commerce, in violation of 21 U.S.C. § 331(a), (k), and with conspiracy to traffic and attempt to traffic in counterfeit drugs in violation of 18 U.S.C. § 2320(a)(4).

[2] The Government also brought a criminal case against Woodfield Pharmaceutical, LLC ("Woodfield Pharmaceutical"), another company owned by Runsdorf. *See United States v. Woodfield Pharm. LLC*, No. 1:22-cr-69 (E.D. Tex.). Woodfield Pharmaceutical pleaded guilty to trafficking in drugs with counterfeit mark on August 22, 2022, and is also set for sentencing on July 27, 2023.

No. 1:22-cv-448-CKK (D.D.C.); *Virtus Pharm., LLC v. Garland*, No. 1:21-cv-02308-CKK (D.D.C.). Virtus's later-filed case against the DEA remains pending. Separately, Virtus also sued Woodfield Distribution, Woodfield Pharmaceutical, and Runsdorf, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, gross negligence, and tortious interference with Virtus's business relationships. *See Virtus Pharm., LLC v. Garland*, No. 8:21-cv-02427 (M.D. Fla.). To date, the DEA has not released Virtus's products that it seized during the Woodfield Distribution raid.

In the present motion, Virtus argues that it is entitled to restitution as a victim of Runsdorf's crimes. Specifically, Virtus asserts that "Runsdorf's participation in the criminal drug-trafficking scheme thus directly caused Virtus to sustain financial losses: the DEA seized Virtus's products because of Runsdorf's criminal misconduct." Virtus seeks an order of restitution in the amount of $6,221,386.00, which it alleges to be the gross value of the pharmaceutical products that it lost as a result of the DEA's raid of Woodfield Distribution's warehouse. Virtus also requests an opportunity to be heard at Runsdorf's sentencing hearing.

II.   Analysis

    A.   Legal Standard

Section 2320 of Title 18 of the United States Code criminalizes the offense of trafficking in counterfeit goods or services. Restitution for victims harmed by a violation of § 2320 is subject to the provisions of 18 U.S.C. § 2323. *See* 18 U.S.C. § 2320(c) ("[R]estitution relating to this section shall be subject to section 2323, to the extent provided in that section, in addition to any other similar remedies provided by law."). In turn, 18 U.S.C. § 2323(c) states that when a defendant is convicted of an offense under § 2320, the court "shall order the person to pay

restitution to any victim of the offense as an offense against property referred to in [the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A(c)(1)(A)(ii)]." 18 U.S.C. § 2323(c). The Government bears "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense . . . ." 18 U.S.C. § 3664(e); *see United States v. Richardson*, 67 F.4th 268, 271-72 (5th Cir. 2023).

Under the MVRA, a "victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2).[3] In cases involving conspiracy, a victim includes "any person directly harmed by the defendant's criminal conduct in the course of the . . . conspiracy." *Id.* The United States Court of Appeals for the Fifth Circuit has held that the MVRA "authorizes restitution to a victim 'directly and proximately harmed by the defendant's offense of conviction.'" *United States v. Kim*, 988 F.3d 803, 811 (5th Cir.), *cert. denied*, 142 S. Ct. 225 (2021); *United States v. Benns*, 810 F.3d 327, 329 (5th Cir. 2016) ("Generally, restitution is limited to losses arising from underlying conduct of the defendant's offense of conviction."). "A person is directly harmed by the commission of a federal offense where that offense is a but-for cause of the harm. A person is proximately harmed when the harm is a reasonably foreseeable consequence of the criminal conduct." *United States v. Boeing Co.*, 617 F. Supp. 3d 502, 513 (N.D. Tex. 2022) (quoting *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011)). "Importantly, not every loss incurred by a person

---

[3] Virtus cites the definition of "crime victims" provided in the Crime Victims' Rights Act, 18 U.S.C. § 3771, which similarly requires that the purported victim be "directly and proximately harmed." 18 U.S.C. § 3771(e)(2)(A). To the extent that Virtus asserts that it is entitled to restitution under 18 U.S.C. § 3663, its argument is foreclosed by the plain language of the statute because Runsdorf's offenses are covered by 18 U.S.C. § 3663A. *See* 18 U.S.C. § 3663(a)(1)(A) (excluding "an offense described in section 3663A(c)"); *cf.* 18 U.S.C. § 3663A(c)(1)(A)(ii) (listing covered offenses as including "an offense against property").

or entity affected by a defendant's conduct qualifies under the MVRA. The loss must be caused by the conduct underlying the offense of which the defendant was actually convicted." *United States v. Bailey*, 800 F. App'x 216, 218 (5th Cir. 2020). Additionally, "restitution cannot be awarded for 'losses' attributable to conduct outside the temporal scope of the scheme charged; the same is true for conduct not charged as part of the scheme." *United States v. De Leon*, 728 F.3d 500, 507 (5th Cir. 2013) (citing *United States v. Sharma*, 703 F.3d 318, 323 (5th Cir. 2012)), *cert. denied*, 572 U.S. 1006 (2014). The Fifth Circuit has held that business entities, including limited liability companies like Virtus, may qualify as "victims" eligible for restitution under the MVRA. *See Richardson*, 67 F.4th at 271.

    B.    <u>Virtus Is Not a Victim Under the MVRA</u>

        1.    <u>Virtus Is Not Entitled to Restitution</u>

Here, Virtus has failed to demonstrate that it was directly and proximately harmed by Runsdorf's offenses of conviction—conspiracy to traffic drugs with a counterfeit mark, trafficking in drugs with a counterfeit mark, and conspiracy to commit money laundering. As the Government points out, because a loss must "aris[e] from underlying conduct of the defendant's offense of conviction," *Benns*, 810 F.3d at 329, the victims of counterfeiting offenses are generally understood to be those who have suffered loss because their products or intellectual property have been directly targeted by the defendant's false marking. *See United States v. Sterling*, 685 F. App'x 880, 883-84 (11th Cir. 2017) (determining that the Motion Picture Association of America's ("MPAA") member companies, which held the copyrights for the DVDs that the defendants falsely marked and sold, were victims entitled to restitution because "someone who purchased a counterfeit DVD [from the defendants] would have purchased a genuine DVD"

and the MPAA's members "would have received the wholseale value of box sets sold" if the defendants had not "plac[ed] the counterfeit DVD into the stream of commerce"); *United States v. Neuman*, 406 F. App'x 847, 848-49, 852 n.4 (5th Cir. 2010) (mentioning that Nike received restitution as a victim under the MVRA where the defendant violated 18 U.S.C. § 2320 by trafficking and conspiring to traffic "counterfeit Nike shoes"); *United States v. Beydoun*, 469 F.3d 102, 104, 109 (5th Cir. 2006) (discussing restitution owed to "the legitimate sellers of Zig-Zag rolling papers" where the defendant "conspired with others to import cigarette rolling papers falsely trademarked as 'Zig-Zags'"). Indeed, the very language of § 2320 characterizes victims of the offense of trafficking in counterfeit goods to include "producers and sellers of legitimate goods or services affected by conduct involved in the offense," "holders of intellectual property rights in such goods or services," and "the legal representatives of such producers, sellers, and holders." 18 U.S.C. § 2320(e)(2) (describing the persons who may "submit victim impact statements" to assist with preparation of the defendant's presentence report).

Importantly, Virtus does not refute or otherwise distinguish the cases that the Government cites to support its argument that "restitution for false marking is always related to the losses the victim suffered due to the false marking of its products." Likewise, Virtus does not contend that Runsdorf falsely marked or produced counterfeit versions of its products. In fact, Virtus's current motion and reply state that Virtus "innocently owned" its products, and Virtus emphasizes that "the government never has suggested that Virtus was in any way involved with the criminal misconduct that gave rise to its investigation of Runsdorf's drug-trafficking scheme." Neither the charging instruments in this case nor the Factual Basis (#308) that Runsdorf, Runsdorf's counsel, and counsel for the Government executed make any mention of Virtus or its products. The

6

Government confirms that "Virtus's products are not mentioned in the indictment because they were not involved in Runsdorf's criminal offense." As a result, Virtus has not demonstrated that it was directly and proximately harmed by the conduct underlying the offenses of conviction—Runsdorf's false marking and trafficking of other counterfeit drugs.

Despite conceding that Runsdorf did not counterfeit or otherwise produce false markings of its own products, Virtus insists that it is a victim entitled to restitution for Runsdorf's crimes because "Runsdorf's criminal misconduct directly and proximately harmed Virtus." Specifically, Virtus asserts that if Runsdorf had "not engaged in money laundering and illegal drug trafficking, the DEA would not have seized Virtus['s] products from Woodfield's warehouses, and Virtus would be able to sell the drugs to its customers and satisfy its financial and contractual obligations." As the Government points out, Virtus overlooks the fact that the DEA's seizure of its products at Woodfield Distribution's warehouse breaks the causal chain between Runsdorf's criminal offenses and the loss of Virtus's products.[4] Certainly, the DEA's raid—which directly caused the confiscation of Virtus's products—cannot properly be construed as "underlying conduct" of Runsdorf's counterfeit drug trafficking offenses or his conspiracy to commit money laundering offense. *Benns*, 810 F.3d at 329.

---

[4] In support of this argument, the Government notes that Virtus has argued elsewhere that the DEA is at fault for the loss of its products, referencing Virtus's statement in one of its civil lawsuits against the DEA that "Virtus brings this suit to stop the DEA's unlawful conduct . . . and to secure the return of Virtus's property." Virtus responds that the DEA has "mischaracterized" its statement, explaining that its litigation challenges the DEA's "continued retention of its products" as "arbitrary and capricious." In any event, the court need not rely on Virtus's assertions in its civil lawsuit regarding the DEA's responsibility (or lack thereof) for the loss of its products, as Virtus has nevertheless failed to show in the current briefing that it was directly and proximately harmed by the conduct underlying Runsdorf's offenses of conviction.

Furthermore, the Government points out that "Virtus's controlled substances would have been administratively forfeited [by the DEA's seizure] regardless of whether the government prosecuted Runsdorf, Woodfield, or any of their co-defendants." In fact, the DEA's Order to Show Cause and Immediate Suspension of Registration ("DEA Order") reveals that the DEA's suspension of Woodfield Distribution's and Woodfield Pharmaceutical's Certificates of Registration and the subsequent removal of controlled substances were triggered by Woodfield Distribution's and Woodfield Pharmaceutical's violations of multiple regulations that were not directly related to any involvement in trafficking counterfeit drugs. These violations include the companies' failure to: maintain effective controls against diversion, in violation of 21 C.F.R. § 1301.71(a); maintain accurate continuing records, in violation of 21 C.F.R. §§ 1304.21(a), 1304.22(b); report theft or significant loss of controlled substances, in violation of 21 C.F.R. § 1301.74(c); operate an effective system to identify and report "suspicious orders," in violation of 21 C.F.R. § 1301.74(b); and substantially comply with physical security requirements, in violation of 21 C.F.R. §§ 1301.71-77. In response, Virtus makes much of the fact that a section of the DEA Order also describes Woodfield Pharmaceutical's "connections to [a] drug trafficking organization," specifically Woodfield Pharmaceutical's "paid participation in illicit activity by a suspected [drug trafficking organization]." Virtus fails to show, however, that Runsdorf's criminal offenses both directly and proximately caused the loss of its products. Indeed, the plethora of Woodfield Distribution's and Woodfield Pharmaceutical's other regulatory violations outlined in the DEA Order suggests that the DEA could have elected to suspend the companies' registrations and confiscate the controlled substances housed in Woodfield Distribution's warehouse—including Virtus's products—even without any concerns about Woodfield

Pharmaceutical's ties to a drug trafficking organization, thus defeating Virtus's argument that Runsdorf's criminal conduct was the direct and proximate cause of Virtus's loss.[5] In sum, Virtus cannot demonstrate that Runsdorf's criminal offenses both directly and proximately caused the loss of its products because the DEA's raid on Woodfield Distribution broke the causal chain between Runsdorf's offenses and Virtus's loss.[6]

---

[5] In fact, no evidence in the record indicates that the counterfeit drugs produced by Woodfield Pharmaceutical were manufactured or stored at Woodfield Distribution's warehouse. Indeed, Runsdorf's Factual Basis and the DEA Order both indicate that the counterfeit drugs were transported directly from Woodfield Pharmaceutical's manufacturing facility to the Marshall Drug Trafficking Organization. Specifically, the Factual Basis notes that "the [drug trafficking organization] picked-up the syrup base from the manufacturing facility using rental box-trucks." The Factual Basis further notes that on February 22, 2021, DEA agents "set up surveillance around the manufacturing facility" and observed "Woodfield employees stag[ing] 7 55-gallon drums on two pallets near the loading dock. . . . The DTO's rental truck arrived at approximately 3:36 p.m. and Woodfield employees loaded the 7 55-gallon drums into the rental truck." Additionally, the DEA Order references only Woodfield Pharmaceutical when discussing drug trafficking activity, noting that a confidential source "observed Woodfield Pharma employees loading a truck with 55-gallon drums. DEA investigators then followed the truck to a warehouse leased by a member of the suspected DTO." Moreover, the portion of the DEA Order concluding that "Woodfield's continued operation poses an 'imminent danger to the public health or safety'" lists only Woodfield's afore-mentioned regulatory violations and makes no mention of suspected drug trafficking activity. In other words, it does not appear that counterfeit drugs were manufactured or stored at Woodfield Distribution's warehouse, further bolstering the argument that the DEA's seizure of controlled substances from Woodfield Distribution was prompted by the companies' litany of regulatory violations, not suspicions that Woodfield Pharmaceutical was connected to a drug trafficking organization and counterfeiting activity.

[6] The Government posits another theory that leads to the conclusion that the causal chain was broken between Runsdorf's offenses of conviction and the loss of Virtus's products. The Government suggests that, rather than Runsdorf's counterfeit drug trafficking activities, the loss of Virtus's products was instead caused by Woodfield Distribution's breach of its contract with Virtus. According to the Government, the contract between Woodfield Distribution and Virtus obligated Woodfield Distribution to comply with its regulatory and statutory obligations. As a result, Woodfield Distribution's and Woodfield Pharmaceutical's failure to comply with the regulatory requirements listed in the DEA Order thus breached its contract with Virtus, leading the DEA to revoke Woodfield Distribution's and Woodfield Pharmaceutical's registrations and remove the controlled substances, including Virtus's products. Regardless, under either theory, the DEA raid and seizure of Virtus's products, whether motivated in whole or in part by Runsdorf's criminal conduct, acted as an intervening cause that resulted in the loss of Virtus's products. Consequently, Virtus cannot claim that it was directly and proximately harmed by Runsdorf's criminal offenses such that it qualifies as a victim entitled to restitution under the MVRA.

Importantly, beyond its bald assertion that it has succeeded in establishing "'some direct relation' between Runsdorf's misconduct and Virtus's injury," Virtus provides the court with no examples where third parties have been considered "victims" entitled to restitution pursuant to the MVRA under similarly attenuated circumstances. Instead, Virtus relies on cases discussing proximate cause in the context of civil litigation. *See Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 641, 644 (2008) (lawsuit alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and a state law claim for tortious interference with prospective business advantage); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 263 (lawsuit alleging, *inter alia*, violations of RICO and the Securities Exchange Act).[7] Virtus fails, however, to adduce any authority where courts relied on proximate cause frameworks from civil cases in order to evaluate whether a third party was considered a victim of § 2320 under the MVRA (or in evaluating whether a third party was the victim of any other crime, for that matter). Thus, the civil cases that Virtus cites are inapposite to the issues at hand and fail to persuade the court that Virtus is a victim under the MVRA.

        2.    <u>Virtus Is Not Entitled to an Opportunity to Be Heard at Sentencing</u>

In its reply, Virtus maintains that it has a right to be heard at Runsdorf's sentencing, arguing that the Government's response challenges only Virtus's "right to full and timely restitution" and that the Government thus "has not directly opposed" Virtus's right to be heard at Runsdorf's sentencing. Virtus's argument, however, is specious. While the Crime Victims'

---

[7] While Virtus relies on one criminal case—*United States v. Hayes*, 589 F.2d 811, 821 (5th Cir.), *cert. denied*, 444 U.S. 847 (1979)—for the proposition that "the DEA's actions were 'foreseeable' as the natural result of Runsdorf's criminal conduct," Virtus disregards that *Hayes* merely examines proximate causation in criminal cases in a general sense and does not discuss restitution for victims of crimes.

Rights Act, 18 U.S.C. § 3771, affords certain rights to "crime victims," including "[t]he right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding," the statute defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(a)(4), (e)(2)(A). In other words, Virtus is entitled to be heard at Runsdorf's sentencing only if it was directly and proximately harmed by Runsdorf's offenses of conviction. As the Government argues, and the court's analysis clarifies, Virtus has failed to demonstrate that it was a victim of Runsdorf's offenses of conspiring to traffic counterfeit drugs, trafficking in counterfeit drugs, and conspiring to commit money laundering. The Government states that it "cannot, in good faith, prove that Virtus is a victim of the charged conduct," and as a result, the court "cannot award restitution to Virtus here." Because Virtus is not a victim of Runsdorf's crimes, it logically follows that it is not a "crime victim" with the right to be heard at Runsdorf's sentencing under 18 U.S.C. § 3771(a)(4).[8]

In conclusion, Virtus cannot demonstrate that the loss of its products during the DEA's raid was directly and proximately caused by the conduct underlying Runsdorf's offenses of conviction—Runsdorf's conspiring to engage in and engaging in false marking and trafficking of counterfeit drugs unrelated to Virtus's products and his participation in a conspiracy to commit

---

[8] The court briefly observes that Virtus and the Government disagree as to whether Virtus has suffered an actual loss, as opposed to a prospective loss. Under the MVRA, a victim may receive restitution only for its "actual loss." *See United States v. Williams*, 993 F.3d 976, 980 (5th Cir. 2021) ("[T]he MVRA limits restitution to the actual loss directly and proximately caused by the defendant's offense of conviction." (quoting *Sharma*, 703 F.3d at 323)); *see also Richardson*, 67 F.4th at 271. While the Government argues that Virtus has not suffered an actual loss at this time because the products that the DEA seized have not been destroyed, Virtus retorts that it has suffered an actual, compensable loss because its products "either expired long ago or can no longer be sold to any of Virtus's customers." This dispute, however, is irrelevant. Given that Virtus cannot demonstrate that it is a victim of Runsdorf's crimes under the MVRA, the proper characterization of its loss is immaterial.

money laundering. The Government asserts that it "cannot prove" that Virtus is a victim of any of Runsdorf's crimes, and Virtus has failed to convince the court otherwise. As a result, Virtus is not entitled to restitution for Runsdorf's crimes or an opportunity to be heard at Runsdorf's sentencing hearing.

III. Conclusion

For the foregoing reasons, Virtus's Motion for Relief as a Victim of Crime (#447) is DENIED.

SIGNED at Beaumont, Texas, this 26th day of July, 2023.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE